WILLIAM E. COCHRAN, Appellant, v. ROBERT S. COCHRAN et al., Appellees.

**DEEDS:** Consideration—Adequacy. A quitclaim deed, mutually ex-
1   ecuted by remaindermen to their mother, whereby all parties thereto waived all rights under the will of the testator, and whereby the mother waived her distributive share and took the land subject to the debts against the estate, is supported by ample consideration.

**DEEDS:** Ratification. A quitclaim deed by children to their mother
2   of all their interest in their father's estate is, in effect, ratified and confirmed, after the death of the mother, by an agreement between the same children as to the manner in which the property left by the mother should be distributed among them.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

NOVEMBER 11, 1924.

SUIT in equity, to set aside a quitclaim deed executed by the plaintiff and by the defendants, as grantors, to Margaret Cochran, grantee, who was the mother of plaintiff and defendants herein. Plaintiff avers that the execution of the deed by him was obtained by the fraudulent connivance of the other parties to the transaction. The defenses are: (1) general denial; (2) the statute of limitations; (3) a subsequent written agreement executed by all the parties hereto concerning the subject-matter of this suit. There was a decree dismissing the petition, and plaintiff has appealed.—*Affirmed.*

*S. K. Stevenson* and *Baldwin & Fairchild,* for appellant.

*Dutcher & Hambrecht* and *Henry G. Walker,* for appellees.

EVANS, J.—I. The quitclaim deed under attack was made in September, 1904. The parties thereto were the surviving widow and children of William Cochran, deceased, who died testate and seized of a certain 200 acres of real estate in Johnson County. The testator died in March, 1903. He was survived by his widow Margaret and by three sons and a daughter, viz: John, Robert, William, and Lina (now Mrs. Leighty). By his will the testator devised a life estate in all his realty to his widow. Of the remainder, he devised 100 acres to his son William, plaintiff herein, 60 acres to his son John, and 40 acres to his daughter, Lina. No devise was made to the son Robert, because he had previously received advancements to the full amount of his just share in the estate. Such was the explanation contained in the will. The devise to William included the homestead. It also required William to assume and pay a $1,500 mortgage which incumbered one of the 40-acre tracts devised to him. The widow was appointed executrix of the estate. She and her son William continued in the occupancy of the farm. The payment of claims against the estate appears to have been deferred until the pressure of claimants rendered action imperative. The claims against the estate, as they were finally recognized, amounted to $10,400. A substantial part of these claims comprised debts incurred as surety for the son Robert. Some of these claims in substantial amount were secured also by the signature of William, plaintiff herein. Upon the advice of counsel for the executrix, a conference of the widow and children was held at his office. At such conference the attorney advised that the best solution of the situation confronting the executrix and the devisees was that the devisees of the remainder should execute a quitclaim deed to their mother of all the real estate, and thereby enable her to sell it, in whole or in part, for the purpose of paying the debts and for the purpose of protecting her in the occupancy of the home. This advice was accepted by all parties without any controversy, and the quitclaim deed now under attack was then and there executed and delivered to the mother. Immediately thereafter, two 40-acre tracts were sold, at $61 per acre. The proceeds of such sales were applied upon the indebtedness. A loan was secured at the bank for $5,650,

and this was secured by mortgage upon the remaining real estate. The proceeds of this loan were used in the discharge of the claims against the estate. The two 40-acre tracts thus sold included 20 acres of the land devised to the plaintiff, and included the entire 60 acres which had been devised to the son John. The plaintiff and his mother continued to occupy the remaining 120 acres of the farm, and so occupied the same up to the time of the death of the mother, in 1920. During that period of time, the plaintiff and his mother annually paid the interest upon the incumbrance of $5,650, the principal sum remaining unpaid at the time of the mother's death.

The foregoing presents, in substance, the method adopted of settling the estate of the father of the parties herein. These same parties constitute the heirs of the widow, who died intestate, holding the title to the 120 acres of the farm, subject to a mortgage of $5,650. After the death of the mother, the parties hereto again met, and entered into a written agreement pertaining to her estate, which contemplated the sale, in whole or in part, of the farm, and a distribution of the proceeds in the manner stipulated in such agreement. The son Robert was delegated to make the sale and distribution. He did make a sale of one 40-acre tract at the price of $14,000, and did make distribution of the proceeds in accord with the terms of the agreement. The 40-acre tract thus sold was one included in the former devise to William by the will of his father. This written agreement is pleaded as a defense by the defendants.

The foregoing is the substance of the salient facts in the case. The plaintiff presents in argument the following contentions:

(1) That the quitclaim deed executed by him was without consideration.

(2) That it was obtained fraudulently, in that he was ignorant of his rights, and was misled through the connivance of the other parties.

(3) That an express trust was created, and that he has proved same by the parol evidence of his adversaries.

(4) That a constructive trust was created by the fraud.

It is manifest, upon the face of the record, that the effect

of the execution of the quitclaim deed was to obliterate all bene-
fits which the plaintiff received under the devise of his father's
will, and that the land thus devised to him became a part of the
mother's estate, and is now being distributed in equal shares
among the children of the former testator, as heirs of his widow.
This is the grievance which is emphasized in plaintiff's argu-
ment. The initial proposition of plaintiff's case, as he makes
it, is that there was no consideration for the execution of the
quitclaim deed. This is his major premise, and every other
proposition advanced by him rests upon it.

The proposition itself is not tenable. The deed was not lack-
ing in consideration. Such consideration was twofold: (1) A
consideration moving from his mother, the grantee; (2) a con-
sideration moving from John and Lina, who
joined with him in the execution of the same
deed, whereby they relinquished their devises
under the father's will. Notwithstanding the will, the mother
was entitled to take her distributive share, free from the general
claims against the estate. If she had pursued this course, it
would have charged the entire indebtedness of the estate against
the devises of William, John, and Lina. So far as appears from
the record, the satisfaction of these claims would have wholly
absorbed the estate, apart from the distributive share. Assum-
ing all the land to be worth $61 per acre, two thirds of the estate
would have produced $8,000. Manifestly, therefore, the devisees
did not part with large values in the execution of the quitclaim
deed. The grantee, on her part, waived, in legal effect, her dis-
tributive share, both by the sale of a part of the property and
by the mortgage on the rest. This was abundant consideration
on her part. The mutual execution of the quitclaim deed by the
three devisees amounted to mutual consideration, as among the
three. Each parted with his right as devisee for the common
benefit of all. It must be presumed that neither devisee would
have executed the quitclaim deed unless all devisees executed the
same. The 60-acre tract devised to John has been entirely ap-
propriated. If equities exist in favor of the plaintiff, like equi-
ties exist in favor of John. To grant to plaintiff the relief prayed
for by him would be to take from John the remnant of considera-

1. DEEDS: con-
sideration:
adequacy.

tion received by him for his relinquishment of his devise. It is apparent that the son Robert profits by the final outcome of the transaction. If the disposition of property provided by the father's will could have been carried out, Robert would have received nothing. By the course of events actually followed, he has become an equal participator in the remnant of the father's estate. He becomes such beneficiary, however, not as heir of his father, but as heir of his mother. When the three devisees relinquished their devises, potential equities did exist in their favor, and might well have been considered and provided for by appropriate agreement. Though they had no actual value at that time, there was the possibility that land values would advance, and thereby enlarge the value of the estate left by the testator. The devisees might well have stipulated that, in such event, they should be reinstated pro rata to the unsold remnants of their devises. The moralities of the case would have favored such an arrangement. The same end could have been attained if the mother had made a will, restoring, as far as possible, to these devisees a pro-rata distribution of the remnant of the estate. But nothing of this kind was done, and there is no power in a court of equity to make contracts for the parties or to ignore the contracts which the parties have in fact made. The value of lands did advance tremendously, and this alone has brought into being the subject-matter of this controversy. Without such advance, there could have been no substance to the subject-matter hereof.

We hold that there was no lack of consideration for the quitclaim deed at the time thereof. We are required, upon the record, to hold, also, that there was no fraud perpetrated upon the plaintiff, either by his mother or by his brothers and sister. If a suit had been brought by the plaintiff against his mother, as grantee in the deed, within the period of limitation, the facts here stated would have constituted a complete defense for the mother. She could not equitably have been required to surrender her right under the quitclaim deed, after she had bound herself and her property for the full amount of the claims against the estate. A defense good as to her in her lifetime is good now as to her heirs, and may be interposed by them. The

present grievance of the plaintiff, if any, must be attributed to the failure of the mother to make a will and to recognize therein the moralities of the situation, in the light of advanced values of real estate. Such failure is beyond remedy.

II. We have called attention to the fact that one of the defenses pleaded was the written agreement entered into among all the parties hereto, providing the method of sale and distribution of this very property, as a part of their

2. DEEDS: ratification.

mother's estate. The necessary legal effect of such written agreement was to ratify the quitclaim deed now under attack. This written agreement was pleaded by the defendants as an affirmative defense. It was denied by operation of statute. No other response was made thereto by the plaintiff, either by pleading or by evidence. The evidence shows conclusively that such an agreement was entered into. The plaintiff has pleaded no avoidance thereof. Neither does he suggest any avoidance in argument. This written agreement, of itself, makes a prima-facie defense for the defendants.

What we have already said renders it unnecessary to consider the question of express trust or of the statute of limitations. The decree of the trial court was unavoidable, and it is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.